# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>EMILIO FRANCISCO; PDC CAPITAL GROUP, LLC; CAFFE PRIMO INTERNATIONAL, INC.; SAL ASSISTED LIVING, LP; , SAL CARMICHAEL, LP; SAL CITRUS HEIGHTS, LP; SAL KERN CANYON, LP; SAL PHOENIX, LP; SAL WESTGATE, LP; SUMMERPLACE AT SARASOTA, LP; SUMMERPLACE AT CLEARWATER, LP; SUMMERPLACE AT CORRELL PALMS, LP; TRC TUCSON, LP; CLEAR CURRENTS WEST, LP; CAFFE PRIMO MANAGEMENT, LP; CAFFE PRIMO MANAGEMENT 102, LP; CAFFE PRIMO MANAGEMENT 103, LP; CAFFE PRIMO MANAGEMENT 104, LP; CAFFE PRIMO MANAGEMENT 105, LP; | Case No.: SACV 16-02257-CJC(DFMx)<br><br>**ORDER GRANTING DEFENDANT FRANCISCO'S MOTION TO DISMISS WITH THIRTY DAYS' LEAVE TO AMEND** |

-1-

**CAFFE PRIMO MANAGEMENT 106, LP; CAFFE PRIMO MANAGEMENT 107, LP; and CAFFE PRIMO MANAGEMENT 108, LP,**

        **Defendants.**

## I. INTRODUCTION

On December 27, 2016, Plaintiff Securities and Exchange Commission ("SEC") filed a complaint and an *ex parte* application for a temporary restraining order ("TRO") against Defendants Emilio Francisco and various corporate entities. (Dkt. 1 [hereinafter "Compl."].) The Complaint alleges four violations of Rule 10b-5, under the Exchange Act, and Section 17(a) of the Securities Act. (*See id.*) After a hearing, the Court granted in substantial part the SEC's application for a TRO, (Dkt. 16), and subsequently issued a preliminary injunction against Defendants, (Dkt. 36).

Before the Court is Defendant Francisco's motion to dismiss. (Dkt. 46 [hereinafter "Mot."].) For the following reasons, the motion is GRANTED. Plaintiff SEC is given THIRTY DAYS' LEAVE TO AMEND.[1]

## II. BACKGROUND

The facts as alleged in the Complaint are as follows: the United States Citizenship and Immigration Service ("USCIS") administers the "EB-5 Immigrant Investor

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing on this motion set for April 10, 2017, at 1:30 p.m. is hereby vacated and off calendar.

Program," which sets aside visas for foreign investors who invest at least $500,000 in a "targeted employment area," thereby creating ten full-time jobs for U.S. workers. (Compl. ¶¶ 22–24.) EB-5 investments—*i.e.*, "commercial enterprises" eligible for investment—are approved by USCIS. (*Id.* ¶ 23.) Commercial enterprises are typically organized as limited partnership or limited liability companies, which offer "units" to investors. (*See id.* ¶¶ 25–26.) The LPs or LLCs are thereafter managed by a person or entity other than the foreign investors, who acts as a general partner or managing member. (*See id.* ¶ 33.)

The Complaint alleges that Defendant Francisco is the CEO and Chairman of Defendant PDC Capital Group, LLC ("PDC Capital") and controls various other entities, including PDC Partners Management, Inc., FDC Partners Management, Inc., and Summerplace Management, LLC. (*Id.* ¶ 7.) According to the SEC, Defendant Francisco orchestrated nineteen EB-5 offerings—ten assisted living facilities, eight Caffe Primo restaurants, and an environmentally friendly agriculture and cleaning products manufacturer. (*Id.* ¶¶ 7, 9–21.) Defendants allegedly raised approximately $72.05 million from at least 131 investors between January 2013 and September 2016. (*Id.* ¶ 26.)

Each investment had two components—the USCIS-required $500,000 and an administrative fee ranging from $45,000 to $55,000. (*Id.* ¶¶ 33, 44.) Investors were required to deposit their entire investment into an escrow account managed by The Law Offices of Marilyn Thomassen & Associates, a California law firm owned by Marilyn Thomassen, where Defendant Francisco works as a marketing consultant. (*Id.* ¶¶ 7, 33.) Investors were solicited directly by PDC Capital's website, marketing staff in China, and other Chinese marketing agents. (*Id.* ¶¶ 25–28.) Defendant Francisco allegedly approved all marketing and offering materials provided to investors; PDC Capital representatives met directly with investors at seminars held in China. (*Id.* ¶¶ 29–30.)

The Complaint alleges that the Private Placement Memorandums ("PPMs") associated with each offering state that: (1) the units in the LPs being offered for sale are "securities" and accordingly the PPMs reference provisions of federal securities laws; (2) investors' capital contributions are pooled for the purposes of a particular project; (3) the LPs would be run "exclusively" by the General Partners while Limited Partners have generally no power to participate in management; and (4) proceeds from the offering, except for administrative fees, will be loaned to the LLC associated with the particular EB-5 project and generally General Partner remuneration will come from administrative fees, to comply with USCIS requirements. (*Id.* ¶¶ 34, 38, 46.)

Only the administrative fee could be used to support PDC Capital, and, by extension, Defendant Francisco. (*Id.* ¶¶ 50–51.) However, even though investors paid only approximately $6.55 million in administration fees, approximately $19.2 million was sent to PDC Capital, amounting to an improper diversion of $12.65 million. (*Id.* ¶¶ 54–55.) According to the Complaint, PDC Capital and Defendant Francisco misappropriated at least $9.5 million to finance Defendant Francisco's luxurious lifestyle. (*Id.* ¶ 56.) In addition, PDC Capital and Defendant Francisco diverted investors' funds from one project to another on multiple occasions, even though Defendant Francisco admitted that doing so would violate USCIS requirements for EB-5 investments. (*Id.* ¶ 57; *see id.* ¶¶ 58–59 (describing two examples of such diversion).) No construction has started on any of the assisted living projects. (*Id.* ¶ 62.) Only some of the Caffe Primo restaurants are in operation. (*Id.* ¶ 53.)

Based on these allegations, the SEC filed the Complaint on December 27, 2016. It alleges four causes of action:

(1)  violations of Section 17(a) of the Securities Act, 15 U.S.C. §§ 77q(a)(1)–(3), against all Defendants,

    (2)    violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rules 10b-5(a) and 10b-5(c) thereunder, against all Defendants and against Defendant Francisco as a control person,

    (3)    violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(b) thereunder, Defendants Francisco, PDC Capital, and the LPs for each project, and against Defendant Francisco as a control person, and

    (4)    aiding and abetting violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(b) thereunder against Defendants Francisco and PDC Capital.

(Compl. ¶¶ 69–96.) The SEC applied for a TRO, (Dkt. 4), which the Court granted in substantial part on January 5, 2017, (Dkt. 16). Then, after additional briefing and a hearing, the Court converted the TRO to a preliminary injunction on January 23. (Dkt. 35.) Defendant Francisco filed the instant motion to dismiss on March 6, 2017. (Mot.)

## III. DISCUSSION

### A. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Moyo v. Gomez*, 32

F.3d 1382, 1384 (9th Cir. 1994). The district court may also consider additional facts in materials that the district court may take judicial notice, *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994), as well as "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled in part on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (citations and quotes omitted)). Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In keeping with this liberal pleading standard, the district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

In federal court, a plaintiff alleging fraud must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Under Rule 9(b), the plaintiff must set forth the "who, what, when, where, and how" of the alleged fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Specifically, when an artificial entity is the alleged perpetrator of the fraud, the plaintiff must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1107 (C.D. Cal. 2015).

### B. Analysis

Defendant Francisco raises two arguments in support of his motion to dismiss—that the alleged conduct does not trigger federal securities laws and that the SEC has failed to plead fraud with particularity. (*See* Mot.) The Court considers each in turn.

While convoluted, Defendant Francisco's securities law argument is that the "thrust of this case is not on whether statements were fraudulent, but rather where did the money go after it was invested and which investors were damaged." (*Id.* at 12.) Misconduct following the sale of a security, Defendant Francisco argues, is a matter for state corporate fiduciary duty law, brought by investors, not federal securities law brought by the SEC. (*Id.*) The Court disagrees. The Complaint clearly alleges that Defendant Francisco approved all marketing and offering materials and determined what information from the PPMs would be highlighted in investor presentations. (Compl. ¶¶ 30, 41.) The SEC clearly alleges ongoing fraud, with 131 investors over more than three and a half years—negating Defendant Francisco's argument that there were two, hermetically separated phases of investment and alleged misappropriation. (*See id.* ¶ 26.) Finally, the fact that Defendant Francisco may *also* be liable to investors for breach of fiduciary duties does not preclude the SEC's enforcement of federal securities laws.

The gravamen of Defendant Francisco's motion is that the Complaint does not comply with Federal Rule of Civil Procedure 9(b). (Mot. at 1–11; Dkt. 48 at 1–16.) Defendant Francisco accurately highlights multiple key allegations in the Complaint which are couched in vague, hedging language. (*See, e.g.*, Compl. ¶ 38 ("Typically, the offering documents state . . . ."); *id.* ¶ 39 ("In general, any remuneration paid by the limited partnership to the General Partners is to be paid out of administration fees, . . . ."); *id.* ¶ 48 ("The PPMs for the Caffe Primo LPs typically state . . . ."); *id.* ¶ 53 ("As of November 2016, construction may have started on one of the facilities. Some of the

Caffe Primo restaurants are in operation, . . . ."); *id.* ¶ 54 ("Approximately 131 investors paid into escrow about $6.55 million . . . ."); *id.* ¶ 57 ("Defendants Francisco and PDC Capital diverted investors' funds from one project to another on multiple occasions. . . . Francisco and PDC Capital frequently moved investors' funds among various projects."); *id.* ¶ 60 ("By misappropriating a substantial portion of the investors' capital contributions . . . .").) Likewise, the Complaint does not clearly present Defendant Francisco's alleged role in the fraud. (*See, e.g.*, *id.* ¶ 7 ("Francisco also controls and/or serves as the CEO of other entities involved the fraudulent scheme, such as . . . ."); *id.* ¶¶ 27–29 (referring to PDC Capital's staff without specifying whether Defendant Francisco is included); *id.* ¶ 41 ("Defendant Francisco and one of his associates provided the information that was included in the PPMs and other offering documents . . . ."); *id.* ¶ 42 ("Defendant Francisco controlled the bank accounts . . . directly or indirectly . . . ."); *id.* ¶ 45 ("Defendants PDC Capital and Francisco, directly or indirectly, provided the following offering documents to investors . . . .").)

Simply stated, the SEC has failed to comply with Rule 9(b). While the broad strokes of the alleged fraud is clear—PPMs promise allocation of money to particular projects, instead Defendant Francisco mingled funds and improperly diverted funds from projects to his personal enrichment—the Complaint does not delineate the nature of the fraud in each particular offering. Rather than describing the commonalities between offerings or the traits of some or most offerings, Rule 9(b) requires clear allegations of which statements were made with which offerings when and through which means. It also mandates that the SEC clearly state the extent of Defendant Francisco's role in formulating, approving, and distributing such statements, and mingling and diverting funds. The vague generalities of the Complaint directly contrast with the detailed information and analysis presented to the Court upon the SEC's application for a TRO and motion to convert the TRO to a preliminary injunction. (*Cf.* Dkts. 5, 29, 30, 32.) As the Court stated, there is "extensive, thorough, and compelling evidence" of fraud, (Dkt.

16 at 2); particularly concerning was the Receiver's report detailing systemic undercapitalization, projects completely stripped of assets or, at best, languishing, and attempts to stymie the SEC's investigation through transferring assets to affiliated companies, (*see* Dkt. 32). None of this detail, however, is present in the Complaint.

The current Complaint is insufficiently vague and accordingly must be DISMISSED. However, in light of the abundant evidence heretofore presented to the Court, the SEC is given THIRTY DAYS' LEAVE to file an amended complaint. The Court strongly encourages the SEC to present specific allegations for each offering and to attach any documentation necessary to clarify and concretize any necessary generalizations.

**IV. CONCLUSION**

Defendant Francisco's motion to dismiss is GRANTED. The SEC is given THIRTY DAYS' LEAVE to file an amended complaint.

DATED: April 4, 2017

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE