ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
DAVID R. ZARO (BAR NO. 124334)
PETER A. GRIFFIN (BAR NO. 306201)
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
         pgriffin@allenmatkins.com

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
EDWARD G. FATES (BAR NO. 227809)
One America Plaza
600 West Broadway, 27th Floor
San Diego, California 92101-0903
Phone: (619) 233-1155
Fax: (619) 233-1158
E-Mail: tfates@allenmatkins.com

Attorneys for Receiver
THOMAS A. SEAMAN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>EMILIO FRANCISCO; PDC CAPITAL GROUP, LLC; CAFFE PRIMO INTERNATIONAL, INC.; SAL ASSISTED LIVING, LP; SAL CARMICHAEL, LP; SAL CITRUS HEIGHTS, LP; SAL KERN CANYON, LP; SAL PHOENIX, LP; SAL WESTGATE, LP; SUMMERPLACE AT SARASOTA, LP; SUMMERPLACE AT CLEARWATER, LP; SUMMERPLACE AT CORRELL PALMS, LP; TRC TUCSON, LP; CLEAR CURRENTS WEST, LP; CAFFE PRIMO MANAGEMENT, LP; CAFFE PRIMO MANAGEMENT 102, LP; et al.,<br><br>Defendants. | Case No. 8:16-cv-02257-CJC-DFM<br><br>**NOTICE OF MOTION AND MOTION FOR APPROVAL OF RECEIVER'S PROPOSED DISTRIBUTION PLAN AND AUTHORIZATION TO PROCEED WITH INTERIM DISTRIBUTION AND CLOSING TASKS**<br><br>Date: September 23, 2019<br>Time: 1:30 pm<br>Ctrm: 7C, 7th Floor<br>Judge: Hon. Cormac J. Carney |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1166999.02/LA

NOTICE OF MOTION AND MOTION FOR
APPROVAL OF RECEIVER'S
RECOMMENDED DISTRIBUTION PLAN

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................... 6

II. FACTUAL BACKGROUND ....................................................................... 7

    A. The Receiver's Appointment ............................................................. 7

    B. Recovery of Receivership Assets and Proposed Interim Distribution .......................................................................................... 8

    C. Claims Review and Allowance ....................................................... 10

    D. Administrative Expenses and Reserves .......................................... 10

III. DISTRIBUTION PLAN ............................................................................. 11

IV. ARGUMENT ............................................................................................. 12

    A. The Distribution Plan Should Be Approved ................................... 13

    B. The Receivership Entities' Assets Should Be Pooled For Distribution ....................................................................................... 13

    C. Distributions Will Be Based Upon Previously Allowed Claims .............................................................................................. 14

V. CONCLUSION .......................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*CFTC v. Topworth Int'l, Ltd.*,
  205 F.3d 1107 (9th Cir. 1999)................................................................... 13

*In re North American Coin & Currency LTD.*,
  767 F.2d 1573 (9th Cir. 1985)................................................................... 14

*SEC v. Capital Consultants, LLC*,
  397 F.3d 733 (9th Cir. 2005)............................................................... 12, 13

*SEC v. Credit Bancorp, Ltd.*,
  290 F.3d 80 (2d Cir. 2002)................................................................. 13, 14

*SEC v. Elliot*,
  953 F.2d 1560 (11th Cir. 1992)................................................................. 12

*SEC v. Forex Asset Mgmt., LLC*,
  242 F.3d 325 (5th Cir. 2001)..................................................................... 14

*SEC v. Hardy*,
  803 F.2d 1034 (9th Cir 1986)................................................................... 12

*SEC v. Wencke*,
  622 F.2d 1363 (9th Cir. 1980)................................................................... 12

*United States v. Real Property Located at 13328 and 13324 State Highway 75 North*,
  89 F.3d 551 (9th Cir. 1996)....................................................................... 14

**TO ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on September 23, 2019, at 1:30 p.m. in Courtroom 7C of the above entitled Court, located at 350 W. First Street, Los Angeles, California 90012, Receiver Thomas A. Seaman (the "Receiver"), the court-appointed permanent Receiver for PDC Capital Group, LLC and its subsidiaries and affiliates (collectively, "Receivership Entities"), will and hereby does move the Court for approval of the Receiver's Proposed Distribution Plan and Authorization to Proceed With Interim Distributions and Closing Tasks ("Motion"). The Receiver's proposed Distribution Plan is attached to the concurrently filed Declaration of Thomas Seaman as <u>Exhibit A</u> and incorporated herein by this reference. Following the Court's granting of this Motion and approval of the Distribution Plan, the Receiver will make an interim distribution to the holders of allowed claims, conclude the disposition of the remaining asset, and address the remaining tax and administrative issues. At such time as the Receiver has completed these tasks, the Receiver will file motions to conclude the receivership make final distribution to investors and creditors in accordance with the Distribution Plan, destroy the records in his possession, and request discharge of the Receiver.

The Motion and Distribution Plan are posted on the Receiver's website: www.pdcreceiver.com. A hard copy of the Motion and Distribution Plan can also be obtained by emailing a request to the Receiver through the website www.pdcreceiver.com, or by sending a written request to the Receiver at: Thomas A. Seaman, Receiver, 3 Park Plaza, Suite 550, Irvine, CA 92614.

This Motion is made on the grounds that the Receiver has completed processing of and obtained the Court's approval of the allowed investor and non-investor claims against the Receivership Entities. The Receiver has completed his accounting and liquidated most of the assets of the receivership estate. Accordingly, the Receiver requests that the Court approve the Receiver's Distribution Plan and

1  authorize the Receiver to make an interim distribution and proceed with the closing
2  tasks.
3       This Motion is based on this Notice of Motion and Motion, the attached
4  Memorandum of Points and Authorities, the supporting Receiver Declaration, the
5  documents and pleadings already on file in this action, and upon such further oral
6  and documentary evidence as may be presented at the time of the hearing.
7       **If you oppose this Motion, you are required to file a written opposition**
8  **with the Office of the Clerk, United States District Court, 350 W. First Street,**
9  **Los Angeles, California 90012, and serve the same on the undersigned no later**
10 **than 21 days prior to the hearing on this Motion.  If you fail to serve a written**
11 **opposition by the above deadline, the Court may grant the Receiver's requested**
12 **relief without further notice.**

14  Dated:  August 20, 2019              ALLEN MATKINS LECK GAMBLE
                                            MALLORY & NATSIS LLP
15                                      DAVID R. ZARO

16                                      By:      */s/     David R. Zaro*
17                                           DAVID R. ZARO
                                             Attorneys for Permanent Receiver
18                                           THOMAS A. SEAMAN

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

1166999.02/LA                    -5-

NOTICE OF MOTION AND MOTION FOR
APPROVAL OF RECEIVER'S
RECOMMENDED DISTRIBUTION PLAN

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.      INTRODUCTION.**

Having essentially completed disposition of the assets of the Receivership Entities (save the below described Montana Property, and collection of a note arising from the sale of SAL Phoenix asset, and reconciliation of the Tucson transaction accounts receivable reconciliation) and the claims allowance process, the Receiver requests approval of the proposed Distribution Plan, which is attached as **Exhibit A** to the Declaration of Thomas A. Seaman in Support of Receiver's Proposed Distribution Plan and Authorization to Proceed with Interim Distribution and Closing Tasks ("Seaman Declaration"). The Distribution Plan provides for priority payment of all allowed administrative expenses, with all other allowed claims being paid *pro rata* from the remaining assets.

Upon the Court's approval of the Distribution Plan, the Receiver will make an interim distribution to the holders of allowed claims and complete the remaining work of the receivership, including but not limited to filing of tax returns, selling the sole remaining real and personal property located at and commonly known as Professional Loading Services, 3616 Eastside Highway, Stevensville, Montana 59870 (the "Montana Property"), collecting on certain outstanding receivables, and preparing the final accounting in anticipation of closing the receivership (collectively the "Closing Tasks"). Thereafter, the Receiver will file a motion seeking authority to make a final distribution to investors and creditors with allowed claims, destroy records, pay the Receiver and his professionals, discharge of the Receiver and close the receivership (the "Closing Motion").

In preparing the Distribution Plan, the Receiver considered the fact that Defendants Emilio Francisco, Robert Ferrante, and the Receivership Entities made extensive transfers of cash between and among themselves to create the liquidity necessary to pay expenses, pursue new projects and fund the individual defendants' lifestyles. Such transfers were part of the fraudulent scheme which resulted in the

filing of the underlying civil action by the Securities and Exchange Commission (the "Commission"). In light of the extensive commingling of assets and the general failure to comply with the terms related to the use of proceeds contained in the private placement memorandum issued to investors, the Receiver concluded that unwinding these transactions was not possible. While some EB-5 Investor claimants' funds remained with the projects in which they originally invested, it would be entirely unfair to the vast majority of investors and creditors to make distributions on an entity by entity basis.

Accordingly, the proposed Distribution Plan provides that all receivership assets be pooled and allowed claimants receive a *pro rata* distribution from the pool in accordance with the Distribution Plan terms, rather than allowing investors and creditors that benefitted from intercompany transfers to receive a greater share of receivership assets at the expense of other investors and creditors. In other words, the Distribution Plan attempts to equalize claimant recoveries regardless of the timing of the investments or the debt, or the specific project into which investments were made.

## II. FACTUAL BACKGROUND.

### A. The Receiver's Appointment.

On January 5, 2017, the Receiver was appointed as the federal equity receiver in the enforcement action brought by the Commission known as *Securities and Exchange Commission v. PDC Capital Group, LLC et al,*, in the United States District Court, Central District of California, Case No. 8:16-cv-02257-CJC-DFM ("SEC Action"), pursuant to that Order Granting in Substantial Part Plaintiff's Application For a Temporary Restraining Order And Appointing a Temporary Receiver. The Receiver became permanent pursuant to the Preliminary Injunction Against All Defendants order entered on January 23, 2017 (together, the "Appointment Orders"). [Dkt. No. 16 and No. 36.] Mr. Seaman was appointed as Receiver for PDC Capital Group LLC and its subsidiaries and affiliates

(collectively, the "Receivership Entities").  (Id.)

The Receiver was vested with exclusive authority and control over the assets of the Receivership Entities, directed to undertake an investigation and accounting of the Receivership Entities' assets, and empowered to marshal and recover all available assets for the benefit of the Receivership Entities.

The Receiver completed his investigation and accounting.  All of the assets of the Receivership Entities have been sold or abandoned to creditors except for the Montana Property.  The Receiver is pursuing the sale of the Montana Property and associated ammunition business and is considering an offer to purchase the real property and business.  If this transaction is not promptly consummated, then the Receiver will list the property and business with the appropriate broker(s).  While the Receiver may recover some additional money from a sale of the Montana Property, the disposition of this remaining asset should not delay approval of the proposed Distribution Plan and interim distribution.

**B.    Recovery of Receivership Assets and Proposed Interim Distribution.**

The principal Defendants raised approximately $72.05 million from approximately 130 investors through private placement offerings related to real estate projects.  These proposed projects were to be either senior assisted living facilities or Caffe Primo restaurants and were ostensibly being developed in a manner consistent with the investors' goals of qualifying for green cards under the EB-5 investor immigration program.  As previously reported, the investors' funds were diverted from their original purpose.  Consequently, most of the investor funds were commingled and used to purchase, in whole or in part, 16 real properties plus an ammunition company in Montana.  These 16 properties consisted of a variety of parcels of raw land in California and Florida, along with two projects in Arizona.  Aside from the project in Tucson, Arizona, none of the other properties were developed into operating assisted living facilities.

Over the past two years, the Receiver has sold those properties where the Receiver could locate a buyer willing to pay more than the encumbrances upon the property. Unfortunately, the Defendants encumbered the real properties with significant debt, thereby stripping away much of the equity in the assets. As a result, the Receiver recovered significantly less than the original investment amounts associated with each property. The Receiver also decided to abandon four of the properties where, after extensive marketing, no offers were made in excess of the secured debts.

Based upon the sale of the real properties, a luxury yacht and the personal property associated with the Caffe Primo entities, as well as the conclusion of several lawsuits, and interest income earned on cash held by the Receiver, the Receiver has recovered $16,989,832.36, and is currently holding $11,287,932.55. In addition, the Receiver anticipates collecting sales proceeds from the Pro Loading asset, collecting an additional $256,250 in connection with a promissory note arising out of the sale of the Phoenix Property and may not need a contingent loss reserve set aside of $150,000 as part of the Tucson asset sale (collectively, "Arizona Property Funds.") Ignoring these potential additional sources of funds, the Receiver recommends establishing a reserve of $1,550,000 to pay future administrative expenses, estimated taxes, and other contingencies. This will leave $9.378 million for an interim distribution to claimants.

The reserve is comprised of the following contingent liabilities, discussed in further detail below:

| | |
|---|---:|
| Professional fees held back pending final accounting | $550,000 |
| April, May and June 2019 fees | $100,000 |
| Future costs of administration | $150,000 |
| Potential tax liabilities | $300,000 |
| Tax preparation | $250,000 |
| Tucson Medicare audit reserve | $150,000 |
| Contingencies | $50,000 |
| Total | $1,550,000 |

The reserve will likely not be fully needed, however, since there are no other

1. sources of income, the Receiver believes it is prudent to set aside sufficient funds to
2. address unexpected and unknown costs. After the sale of the Montana Property, the
3. recovery of the Arizona Property Funds, reconciliation of the Tucson Medicare audit
4. reserve, and completion of tax returns, the Receiver will submit a final accounting
5. and seek approval will make a small final distribution to investors. Alternatively,
6. under certain circumstances, the Receiver may turn over the surplus to the
7. Commission.

### C. Claims Review and Allowance.

On April 20, 2018, the Receiver filed a motion for Court approval of a proposed claims process. [Docket 233] The motion was granted by order of the Court dated May 4, 2018 ("Claims Order"). [Docket 254] Pursuant to the Claims Order, the Receiver set and published a claims bar date of July 10, 2018 and published/distributed claim forms and instructions. The Receiver reviewed each claim and its supporting documentation, made preliminary determinations as to validity and value, and attempted to resolve disputed claims with the applicable claimants. The Receiver filed motion papers with the Court seeking approval of proposed allowed claim amounts and treatment recommendations with respect to various claimants ("Omnibus Motion"). [Dkt. 323] The Receiver validated the claims of 138 investors for a total of $66,340,000. In addition, the Receiver received non-investor claims that the Receiver proposed allowing in the amount of $147,695. The Court granted the Omnibus Motion on May 13, 2019, approving allowed claim amounts as set forth therein. [Dkt. 340]. Based on the total allowed claims of $66,487,695, the total distribution of $9.9 million will represent a recovery of 14.9% of losses.

### D. Administrative Expenses and Reserves.

As is customary and consistent with the Appointment Orders, the Distribution Plan calls for payment of administrative expenses of the Receiver and his professionals; in this case, Allen Matkins and Berkeley Research Group

(collectively, the "Professionals.") These Professionals provided and continue to provide legal and forensic computer services required by the Receiver and Receivership Entities.

Over the course of this case, the Receiver and Professionals submitted interim fee applications to the Court for work performed over a set period of time. In each case, the Professionals requested interim approval of 100% of their fees, but payment of only 80% in the case of the Receiver's counsel and 90% for the Receiver's fees and Berkeley Research Group's fees. This 20% and 10% was held back pending the conclusion of the receivership.

To date, the Receiver and Professionals have recovered nearly $17 million in cash and successfully concluded litigation. Seaman Decl. ¶ 5. Given the overall success of the receivership, the Receiver and Professionals will file a motion requesting payment of their final fee applications and payment of the 20% and 10% hold backs at such time as the closing motions are filed. Id. To date, the total amount of professional fees held back is $540,000.

The Reserve also provides for $250,000 for to cost to prepare income tax returns. The tax preparation work is complex due to the number of entities, the need to file certain pre-receiver tax returns, and the Qualified Settlement Fund returns. The reserve also provides for $100,000 to cover professional fees incurred for May, June and July 2019, and $150,000 in estimated fees of the Receiver and his counsel to conclude the sale of the remaining asset and close the estate. While the Receiver and Professionals believe that they have correctly analyzed and prepared tax returns, the IRS and State taxing agencies maintain certain audit rights. The Receiver has also provided for a reserve of $300,000 for potential tax liabilities. The reserve also provides for a reserve of $150,000 arising from the contingent liability of a Medicare audit of Tucson TRC post-receiver accounts receivable.

### III. DISTRIBUTION PLAN.

The Distribution Plan, attached hereto as **Exhibit A**, lays out the Receiver's

proposed distribution of receivership assets to holders of allowed claims. The Distribution Plan provides for the establishment of a Reserve in the amount of $1.4 million to cover allowed administrative expenses through completion of the receivership. As noted above, the Distribution Plan generally provides for (a) pooling of receivership estate assets, (b) payment of priority or administrative claims, and (c) *pro rata* distributions from the pool to all holders of allowed claims (investors and non-investors). The pro rata payments will be based upon the allowed claims set forth in the order granting Receiver's Omnibus Motion [Docket No. 340]. Under the Distribution Plan, the Court retains exclusive jurisdiction to resolve all matters relating to the Distribution Plan and receivership case in the event such issues arise after the Distribution Plan is approved and the case is closed.

## IV.     ARGUMENT.

"The power of a district court to impose a receivership or grant other forms of ancillary relief does not in the first instance depend on a statutory grant of power from the securities laws. Rather, the authority derives from the inherent power of a court of equity to fashion effective relief." *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980). The "primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir 1986). As the appointment of a receiver is authorized by the broad equitable powers of the court, any distribution of assets must also be done equitably and fairly. *See SEC v. Elliot*, 953 F.2d 1560, 1569 (11th Cir. 1992).

District courts have the broad power of a court of equity to determine the appropriate action in the administration and supervision of an equity receivership. *See SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005). The Ninth Circuit explained:

> A district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad. The district court has broad powers and wide discretion to

> determine the appropriate relief in an equity receivership. The basis for this broad deference to the district court's supervisory role in equity receiverships arises out of the fact that most receiverships involve multiple parties and complex transactions. A district court's decision concerning the supervision of an equitable receivership is reviewed for abuse of discretion.

*Id.* (citations omitted); *see also CFTC v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1115 (9th Cir. 1999) ("This court affords 'broad deference' to the court's supervisory role, and 'we generally uphold reasonable procedures instituted by the district court that serve th[e] purpose' of orderly and efficient administration of the receivership for the benefit of creditors."). Accordingly, the Court has broad discretion in approving a plan of distribution and authorizing distributions.

### A. The Distribution Plan Should Be Approved

The Distribution Plan is designed to provide an orderly and fair distribution of receivership estate assets. Priority is given to fees and costs of the receivership approved by the Court and other administrative claims, as is customary in federal equity receiverships. All other claimants will receive a *pro rata* distribution of cash in the receivership estate in accordance with the Distribution Plan terms. Where the assets of a receivership estate are insufficient to pay all claims, pro rata is the most fair and equitable method of distributing receivership estate assets to similarly situated claimants. *See Capital Consultants*, 397 F.3d at 750; *SEC v. Credit Bancorp, Ltd.*, 290 F.3d 80, 88-89 (2d Cir. 2002) (endorsing *pro rata* distribution of receivership assets).

### B. The Receivership Entities' Assets Should Be Pooled For Distribution

Where, as here, there is extensive movement of cash and assets between and among entities involved in securities violations, equity demands that assets of all Receivership Entities be pooled for purposes of distribution so as not to favor creditors or investors in one Receivership Entity that happened to benefit from inter-company transfers at the expense of investors in other Receivership Entities. *See*

*United States v. Real Property Located at 13328 and 13324 State Highway 75 North*, 89 F.3d 551 (9th Cir. 1996); *In re North American Coin & Currency LTD*., 767 F.2d 1573 (9th Cir. 1985); *SEC v. Credit Bancorp, Ltd*., 290 F.3d 80 (2d Cir. 2002); *SEC v. Forex Asset Mgmt., LLC*, 242 F.3d 325 (5th Cir. 2001).

Due to the extensive flow of monies between and among the Receivership Entities, the amounts held by or assets of any one entity at the time the Receiver was appointed was almost entirely fortuitous. Had the scheme been stopped a month earlier or a month later, the assets in each entity or fund might have been very different. For example, in this instance, the Defendants borrowed millions of dollars in the 30-60 days prior to the appointment of the Receiver, thereby depleting the equity from a myriad of projects and properties. In other words, the value of each of the assets and one's investment were in a state of flux such that a few projects were on the verge of being developed while most were heading toward potential insolvency. Accordingly, given the established commingling of funds, the happenstance of where assets lied at the commencement of the receivership should not result in one group of investors or creditors being favored over another.

Moreover, it would not be possible at this stage to unwind these numerous inter-fund transactions. Even if it were possible, such unwinding would not produce a more equitable result than creating a single pool of assets and distributing the pool on a pro rata basis as provided in the Distribution Plan.

### C. Distributions Will Be Based Upon Previously Allowed Claims

Each investor and non-investor is deemed to have an allowed claim consistent with the order granting the Omnibus Motion. As such, each claimant shall receive their pro rata distribution based upon their allowed claim.

The Distribution Plan contemplates an interim distribution be made as soon as practicable. As set forth above, the Receiver recommends an interim distribution of $9.9 million, after establishing a cash reserve of $1.4 million. Following receipt of the proceeds from the anticipated sale of the Montana Property, and the Arizona

Property Funds, and completion of the above described Closing Tasks, the Receiver will seek authority to make a small final distribution. In the meantime, the cash reserve, as with all cash in the receivership estate, will be maintained in federally-insured bank accounts and U.S. treasury securities.

## V. CONCLUSION

Based on the foregoing, the Receiver requests an order approving the Distribution Plan attached as Exhibit A to the Declaration of Thomas A. Seaman and authorizing the Receiver to proceed with an interim distribution and the Closing Tasks as described herein.

Dated: August 20, 2019

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By: */s/ David R. Zaro*
David R. Zaro, Esq.
Attorneys for Receiver
THOMAS A. SEAMAN

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

1166999.02/LA

-15-

NOTICE OF MOTION AND MOTION FOR
APPROVAL OF RECEIVER'S
RECOMMENDED DISTRIBUTION PLAN

# PROOF OF SERVICE

*Securities and Exchange Commission v. Emilio Francisco; PDC Capital Group, LLC, et al.,*
USDC, Central District of California – Case No. 8:16-cv-02257-CJC-DFM

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 865 S. Figueroa Street, Suite 2800, Los Angeles, California 90017-2543.

On **August 20, 2019**, I caused to be served the document entitled: **NOTICE OF MOTION AND MOTION FOR APPROVAL OF RECEIVER'S PROPOSED DISTRIBUTION PLAN AND AUTHORIZATION TO PROCEED WITH INTERIM DISTRIBUTION AND CLOSING TASKS** on all the parties to this action addressed as stated on the attached service list.

☒ **OFFICE MAIL**: By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices. I am readily familiar with the firm's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **OVERNIGHT DELIVERY**: I deposited in a box or other facility regularly maintained by express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, a true copy of the foregoing document(s) in sealed envelope(s) or package(s) designed by the express service carrier, addressed as indicated on the attached service list, with fees for overnight delivery paid or provided for.

☐ **HAND DELIVERY**: I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐ **ELECTRONIC MAIL**: By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒ **E-FILING**: By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX**: By transmitting the document by facsimile transmission. The transmission was reported as complete and without error.

1155195.12/LA

1  I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on **August 20, 2019** at Los Angeles, California.

/s/ *Martha Diaz*
Martha Diaz

1155195.12/LA

- 2 -

| | |
|---|---|
| 1 | **SERVICE LIST** |
| 2 | *Securities and Exchange Commission v. Emilio Francisco; PDC Capital Group, LLC, et al.,* |
| 3 | USDC, Central District of California – Case No. 8:16-cv-02257-CJC-DFM |
| 4 | Emilio Francisco |
|   | 15 Rue Saint Cloud |
| 5 | Newport Beach, CA  92660 |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

1155195.12/LA

- 3 -